[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The court-appointed receiver has moved the court to approve its final report and to release its bond. The court held a hearing on the receiver's motion on June 11, 1998. Both parties and the receiver's counsel were in attendance. The court accepted the receiver's report, discharged it from further duties, approved an additional fee of $750 for the receiver and released the bond. The court entered an order by stipulation of the parties that the net funds in the possession of the receiver be transferred to the possession of plaintiff's attorney to be held in an interest-bearing escrow account pending further order of the court.
At the hearing the court was presented with testimony regarding the value of the subject property from Charles Marland, the former owner, the appraiser for the plaintiff, and the appraiser for the defendant. Based upon the oral testimony presented, the documentary evidence submitted and the stipulations of the parties, the court makes the following findings:
The parties stipulated that the total debt due plaintiff was CT Page 7077 in the amount of $635,170.80, consisting of the judgment debt of $534,803.56 and postjudgment interest of $100,367.24 to date. Per diem interest will accrue at the rate of $146 daily.
Counsel further stipulated as to the qualifications of the appraisers.
The property foreclosed is known as 167-3 Elm Street, Old Saybrook, Connecticut. Prior to the foreclosure, it was owned by defendant, Charles A. Marland. On January 13, 1998, the court's judgment vested ownership in the plaintiff's assignee. The values submitted by the appraisers and Mr. Marland were as of January 13, 1998.
The property consists of two one-story metal buildings sited on 1.60 acres of land appropriately zoned I-1 Industrial. The two buildings comprise 26,000 square feet of unheated storage space plus a small heated office. They are situated on a lot enclosed by a chain link fence and a security gate. The highest and best use of the property is for its continued use as a mini-storage facility. The property is known as "Saybrook Mini-Store". At the time the court entered a judgment of strict foreclosure in February 1996, it found the debt as of February 12, 1996, to be $534,803.56, and the value of the premises to be $561,000, as of December 15, 1995. The court established the value after hearing the testimony of two appraisers. Plaintiff's appraiser, Buckley Appraisal Services, Inc., submitted a value of $443,000 for 180 units of mini-storage. Defendant's appraiser found an indicated value of $670,000 for the same number of storage units.
The current appraisals show an increase in the number of rental units, Buckley, 194 units; Marsele, 196 units, although Marsele's income approach is based upon 180 units.
Defendant's Exhibit I is the written appraisal report of Peter R. Marsele. Plintiff's Exhibit I is the written appraisal report of Buckley Appraisal Services, Inc. Plaintiff's report concludes that the market value of the property as of January 13 is $450,000. Defendant's report concludes that the market value of the property on January 13 is $700,000.
Mr. Marsele used the cost approach to value to achieve an indicated value by cost approach of $702,000. He attributed $70,000 of value to the raw land, and $40,000 to the land improvements to achieve a total land value of $110,000. To this CT Page 7078 he added a present value of the buildings of $591,768.00. Mr. Marsele, the defendant's appraiser, did not utilize the sales comparison approach to value but made a finding of indicated value by the income approach. Using this approach, he summarized annual reasonable rentals of $160,500, to which he deducted a rent and vacancy allowance of $24,075.00. He also deducted operational expenses of $59,300, which resulted in a net reasonable income of $77,125.00. He then capitalized this figure at 11.05 percent, which indicated a value of $698,000. Mr. Marsele agreed with Mr. Sherwood, the appraiser who testified on behalf of Buckley for the plaintiff, that market participants interested in properties such as this, place little reliance on the cost approach when analyzing income property similar to this property.
The term "reasonable rentals" used by Mr. Marsele is frequently referred to in appraisals as economic rentals and is based on an analysis of comparable rentals as a basis for what the property can produce under effective management. In this case, the actual rentals received by the receiver and former owner were available to both appraisers and were actually used by the plaintiff's appraiser.
Plaintiff's appraiser, Mr. Sherwood, eschewed the cost approach to value and relied on the sales comparison approach and the comparable market rental data. The former produced a value of $2,300 per unit for 194 units, equaling $446,200, rounded off the $446,000. The latter approach, based upon the current rental rates for the subject property, achieved a potential gross income of $136,164. This was reduced to effective gross income of $108,931, by deducting a vacancy and collection loss of $27,233, which amounted to 20 percent of the gross income. He took a further deduction for operating expenses of $61,521, to produce a net operating income of $47,410, which capitalized at .1054, indicates a value of $449,810, rounded off to $450,000. Reconciling the sales comparison approach of $446,000, with the income capitalization approach, the appraiser concluded that the market value of the property as of January 13, 1998, is $450,000.
The court permitted the former owner, Mr. Marland, to testify as to his opinion of the value of the property on January 13, 1998. Mr. Marland rendered an opinion that the property was worth $800,000 on that date. Marland based his opinion on prior negotiations with former prospective purchasers. The court cannot credit this testimony on the same level with that of the two CT Page 7079 qualified experts.
The large discrepancy between the appraisers can be attributed to the use of economic rentals by Mr. Marsele in his income capitalization approach. These increases averaged approximately 20 percent. The court's analysis of both appraisals conducted with an awareness of its prior evaluation of the property requires the court to increase economic rentals by 10 percent to $149,780. This is justified by comparison with existing rentals at the Mill Rock Road property, one part of which is contiguous to the subject. It is also justified by the apparent stabilization of land values and the improvement in the economic situation in the Old Saybrook area and the change in management from receiver to owner-operator. The court's analysis also permits it to find that the appropriate vacancy and collection loss should be 15 percent in view of the current vacancy rate of the property, which is approximately 7 percent. Recomputing the net operating income using these debits results in a net operating income of $65,793, which capitalized at .1054, permits the court to find the value of the subject property as of January 13, 1998, to be $624,212.00.
Dorsey, J. Judge Trial Referee